## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL CHOUPAK and SERGUEI SOFINSKI, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. Action No. 11-1281-RGA-CJB |
| | ) |
| VLADIMIR RIVKIN, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Pending before the Court is a motion by Plaintiffs Michael Choupak ("Choupak") and

Serguei Sofinski ("Sofinski") (collectively, "Plaintiffs") to remand this action to the Court of

Chancery of the State of Delaware ("Chancery Court"). (D.I. 5) Defendant Vladimir Rivkin

("Defendant" or "Rivkin") removed this action from Chancery Court based upon his assertion

that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant opposes

Plaintiffs' motion to remand. Because this Court lacks subject matter jurisdiction, I recommend

that the Court GRANT Plaintiffs' motion and remand this action to Chancery Court.

## I. BACKGROUND

### A. Procedural Posture

On October 31, 2011, Plaintiffs filed a three-count Complaint against Defendant in

Chancery Court. (D.I. 1, ex. A (C.A. No. 7000-VCL) ( "Compl.")) The Complaint relates to the

May 31, 2011 acquisition of Intermedia.NET, Inc. ("Intermedia") by Oak Hill Capital. (*Id.* at ¶

1) Plaintiffs allege that Rivkin, Intermedia's former legal counsel, asserted (1) that he is entitled

to exercise an option to purchase certain shares of preferred Intermedia stock; and (2) that

Choupak and Sofinski defrauded him in 2008 by paying him an allegedly inadequate purchase

price for shares of Intermedia common stock. (*Id.* at ¶¶ 2–3) Plaintiffs further allege that Rivkin's assertions have created an actual controversy as to these issues. They seek declarations, pursuant to Del. Ann. Code tit. 10, § 6501 *et seq.*, that: (1) no options to issue preferred stock of Intermedia exist; (2) no preferred stock of Intermedia exists; (3) Rivkin has no entitlement to any equity of Intermedia; (4) Rivkin was not defrauded by Choupak and Sofinski; (5) Rivkin's claim to Intermedia's preferred stock is barred under applicable state laws; and (6) even if Rivkin did have a valid option to purchase preferred stock, that option has expired. (*Id.* at ¶¶ 34–53)

On December 23, 2011, Rivkin filed a Notice of Removal, invoking the jurisdiction of this Court pursuant to 28 U.S.C. § 1332. (D.I. 1) In that filing, Rivkin asserts that the amount in controversy exceeds $75,000, and that "diversity of citizenship exists" based on the fact that Plaintiff "Choupak is a resident of London, UK," Plaintiff "Sofinski is a resident of California," and Defendant "Rivkin is a resident of the State of Washington." (D.I. 1 at 1–2)

On January 6, 2012, Defendant moved to dismiss the Complaint on various grounds and to transfer the action to the United States District Court for the Northern District of California. (D.I. 3 ("motion to transfer")) On January 17, 2012, Plaintiffs moved to stay briefing on Defendant's motion to transfer, (D.I. 7), which the Court later granted (D.I. 22).

On January 17, 2012, Plaintiffs also moved to remand this action, arguing that "[t]he Notice of Removal . . . is fatally flawed as Rivkin fails to allege complete diversity of citizenship among the adverse parties," (D.I. 5 at 1), and because Rivkin is actually a citizen of California, not Washington (D.I. 6 at 8–10). Defendant timely filed a brief in opposition to Plaintiffs' motion, asserting that Rivkin should be considered a citizen of Washington, that this basis for jurisdiction was properly pled in his Notice of Removal, and that Sofinski's alleged California

2

citizenship should be disregarded for purposes of determining whether complete diversity exists. (*See* D.I. 15) After Plaintiffs filed their reply brief, Defendant moved for leave to file a sur-reply brief (and attached additional exhibits to that motion). (D.I. 20) Plaintiffs opposed Defendant's motion, and filed an additional brief and affidavit substantively addressing the arguments from Defendant's proposed sur-reply. (D.I. 21) On June 4, 2012, the Court granted Defendant leave to file the proposed sur-reply, noting that it would consider all of the briefs, affidavits, and other exhibits filed by the parties in connection with Plaintiffs' motion to remand. (D.I. 23)

On June 7, 2012, the Court heard oral argument on the motion to remand. (D.I. 25 (hereinafter "Tr.")) The motion to remand is therefore ripe for resolution.

## B. Factual Background

Although the parties did not request an evidentiary hearing nor offer any deposition testimony in support of their respective positions, they did submit a voluminous factual record consisting of affidavits, public and private records, residential leases, and documents from unrelated litigation. In particular, Rivkin submitted three different declarations since this litigation commenced. (D.I. 3, ex. B ("First Rivkin Declaration"); D.I. 15, ex. A ("Second Rivkin Declaration");[1] D.I. 20, ex. A ("Third Rivkin Declaration")[2]) In setting forth the factual background relating to the motion to remand, the Court has drawn from this extensive record, and will highlight the key allegations or facts that relate to the motion.

---

[1] The Second Rivkin Declaration was originally submitted as an unsworn document dated February 6, 2012. (D.I. 15, ex. A) On February 16, 2012, Rivkin swore to this declaration before a notary public. The declaration was re-filed with the Court as Exhibit C to D.I. 20.

[2] This document is entitled the "Second Affidavit of Vladimir Rivkin," although it was the third declarative statement submitted by Rivkin since commencement of this action. (D.I. 20, ex. A at 1)

3

As noted above, Rivkin served as general legal counsel for Intermedia beginning in 2000. (Compl. at ¶¶ 14, 15) Rivkin alleges that "[a]ll actions and activity [he] took in connection with [Intermedia] between 2000 and 2008 occurred in Santa Clara County, California." (D.I. 3, ex. B at ¶ 3) Intermedia's offices and principal place of business at that time were also both in Santa Clara County, California. (*Id.* at ¶ 4)

Rivkin is also the co-founder and CEO of IOUbid, Inc. ("IOUbid"), a corporation that assesses and assists with the collecting of judgments. (D.I. 6, ex. D) Prior to October 2011, IOUbid had a "virtual" office in Santa Clara, California, which was purportedly used only for receiving mail. (D.I. 15, ex. A at ¶ 14; D.I. 6, ex. F) Rivkin states that in October 2011, "IOUbid moved its virtual office from California to South Dakota." (D.I. 15, ex. A at ¶ 14) Despite this statement, as of December 13, 2011, the Santa Clara address was still listed on IOUbid's website as the company's address, along with a snapshot of a building with the label "California." (D.I. 6, ex. F) As late as December 28, 2011, IOUbid's website listed the company's telephone number as having a (408) area code, which corresponds to Santa Clara County, California. (D.I. 6, ex. G)

In addition to his prior position as general counsel for Intermedia and his current position as CEO of IOUBid, Rivkin is a prolific real estate investor and developer. Rivkin holds a majority membership interest in VE&E-Nevada, LLC ("VE&E"), a Nevada limited liability company, which holds and develops real property assets in the Pacific Northwest, including Washington and Oregon. (D.I. 15, ex. A at ¶¶ 2, 6) On August 25, 2005, VE&E purchased the Evergreen Ridge apartment complex in Vancouver, Washington. (*Id.* at ¶ 3) Evergreen Ridge is managed by Acula, Inc. ("Acula"), a Nevada corporation with its principal place of business in

4

Washington. (*Id.* at ¶ 4) Rivkin is the President and majority shareholder of Acula. (*Id.*) Acula also holds a 30% membership interest in a Washington limited liability company, called The Islander Resort, LLC, which owns a 48-unit RV park, a 36-unit hotel, and at least one restaurant in Westport, Washington. (*Id.* at ¶ 5)

The record contains a number of Rivkin's statements regarding his residency status. In the First Rivkin Declaration, Rivkin states that "[a]t all times during the time period from 2000 through 2008, [he] was a resident of Santa Clara County in the State of California," residing at a property in Mount Hamilton, California, and then at a home in San Jose, California. (D.I. 3, ex. B at ¶ 2) In the Second Rivkin Declaration, Rivkin clarifies that the Mount Hamilton property was leased to a tenant starting in 2008, and that subsequently the property was acquired by the lender. (D.I. 15, ex. A at ¶ 9; *id.*, ex. 6) Rivkin further states that until 2009, he "lived . . . in San Jose, California," but "at that time it became necessary for [him] to spend a considerable amount of time in the State of Washington," and that he thereafter leased the San Jose property to a tenant. (*Id.*, ex. A at ¶ 8)

However, in the Third Rivkin Declaration, Rivkin states that "[w]ithin 90 days of" August 25, 2005, after VE&E purchased the Evergreen Ridge apartment complex, he "moved to Evergreen Ridge," in Washington. (D.I. 20, ex. A at ¶¶ 1–2) Rivkin states that since 2005, he has lived in multiple units at Evergreen Ridge, including unit 112, 110, and L97, and that he currently lives in unit 110. (*Id.* at ¶¶ 2–3) Rivkin asserts that he has "spent a great deal of [his] time at Evergreen Ridge, particularly (among other times) the latter half of 2011 up to the present." (*Id.* at ¶ 4) He further asserts that he is "a resident, and a citizen, of the State of Washington," that he "intend[s] to remain domiciled and living in Washington," that he has "no

5

plans to leave" and that when he travels away from Washington, he "always intend[s] to return to Evergreen Ridge." (D.I. 15, ex. A at ¶ 1; D.I. 20, ex. A at ¶¶ 4–5)

Beginning on January 1, 2011, Rivkin's current wife (Yelena Yarosh), Rivkin's father, Rivkin's son, and Rivkin's step-daughter began to reside at a home in San Mateo, California. (D.I. 15, ex. 7; D.I. 17, ex. E) Rivkin asserts that when he comes to California, he stays at this San Mateo house (which has been jointly leased by Rivkin's wife and father through June 30, 2012). (D.I. 15, ex. A at ¶ 12) When Plaintiffs sought to serve Rivkin with a copy of the Complaint on December 16, 2011, they sent a process server to the San Mateo house. (D.I. 6, exs. H, I) The process server was met a the door by Rivkin's daughter, who called for Rivkin; Rivkin appeared and received a copy of the Complaint. (*Id.*, ex. I at ¶¶ 3–4)

Over the last year and a half, Rivkin has been involved in several legal proceedings in California. On May 31, 2011, Rivkin filed a motion to dismiss a complaint that had been filed against him and his father in the U.S. District Court for the Northern District of California. (D.I. 6, ex. B) In that motion, Rivkin stated that he "lives in California." (*Id.* at 2) More recently, in July 2011, Rivkin and his wife jointly filed a petition in the Superior Court of California to change the name of Rivkin's step-daughter. (D.I. 17, ex. E) The petition listed Rivkin, Rivkin's wife, and Rivkin's step-daughter as all living at the same address at the San Mateo house. (*Id.*) Rivkin's wife also petitioned for a change of her last name (from Yarosh to Rivkin). (*Id.*)

Rivkin currently holds multiple licenses, including a California driver's license that expires in 2014 (D.I. 6, ex. K), an Oregon driver's license that expires in 2014 (D.I. 17, ex. D), a California real estate license (D.I. 6, ex. L), and a California pilot's license (*id.*, ex. M). Records regarding the Oregon driver's license list Rivkin with an Oregon address, while records regarding

the California pilot's license list Rivkin as having a California address. (D.I. 17, ex. D; D.I. 6, ex. M) Rivkin does not appear to have ever obtained a driver's license (or any other personal license) in Washington.

On January 12, 2012, Rivkin registered to vote in Clark County, Washington. (D.I. 17, ex. C) Those voter registration records list his residential address as "Apt. O" at Evergreen Ridge. (*Id.*)

## II. STANDARD OF REVIEW

### A. Motion to Remand

A defendant has the right to remove a civil action from state court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). When removal is predicated upon diversity of citizenship, federal jurisdiction requires that at least $75,000.00 be at stake, and that the parties are completely diverse, such that no plaintiff is a citizen of the same state as any of the defendants. 28 U.S.C. § 1332(a); *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995). Typically, "[w]hether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint was filed." *McCracken v. ConocoPhillips Co.*, 335 F. App'x 161, 162 (3d Cir. 2009) (per curiam) (internal citation and quotation marks omitted). However, where jurisdiction is asserted by a defendant in a removal petition and later challenged, complete diversity of citizenship must exist not only at the time that the underlying state court complaint was filed, but also at the time that the petition for removal was filed. *Holly Farms Corp. v. Taylor*, 722 F. Supp. 1152, 1156 (D. Del. 1989); *see also Xia Zhao v. Skinner Engine Co.*, Civil Action No. 11-7514, 2012 WL 1758145, at *1 (E.D. Pa. May 16, 2012) (citing cases); 16 James Wm. Moore et al., *Moore's Federal Practice* ¶ 107.14[2][d][1] (3d ed. 2011).

7

The removing defendant bears the burden of establishing jurisdiction. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *see also Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."). This burden is met "by proving diversity of citizenship by a preponderance of the evidence." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). "[T]he removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985); *accord Carlyle Inv. Mgmt., L.L.C. v. Carlyle Capital Corp. Ltd.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011).

B.     **Citizenship for Diversity Jurisdiction**

To determine the citizenship of a party for purposes of diversity jurisdiction, courts must consider where that party was domiciled as of the date that the Complaint and the Notice of Removal were filed. *See McCann*, 458 F.3d at 286 ("Citizenship is synonymous with domicile . . . ."). "'[T]he domicile of an individual is his true, fixed, and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *Id.* (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). In other words, "domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

The Third Circuit has established a non-exhaustive list of factors to consider when determining an individual's domicile, including declarations, exercise of political rights, payment of personal taxes, house of residence, place of business, location of brokerage and bank accounts,

8

location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registrations. *McCann*, 458 F.3d at 286 (citations omitted). In short, a party's domicile is generally "the center of [his] business, domestic, social and civic life." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400–01 (3d Cir. 2008) (citation omitted).

## III. DISCUSSION

### A. Adequacy of the Notice of Removal

Plaintiffs first argue that Rivkin's Notice of Removal is defective because it alleges diversity of *residence*, not *citizenship*. (D.I. 6 at 5) Plaintiffs contend that this fact alone compels remand of this case to the Chancery Court. (*Id.* at 7) In response, Defendant argues that his allegation of residency was accurate, and that it, along with the remainder of the Notice of Removal, provided effective notice of his assertion that diversity of citizenship exists. (D.I. 15 at 8-9) Alternatively, Defendant argues that he should have the opportunity to amend the Notice of Removal to reflect his alleged citizenship in Washington. (D.I. 15 at 9)

As noted above, while Defendant's Notice of Removal generally asserts that "diversity of citizenship exists" among the parties, the only stated basis for that contention is that Plaintiffs are "resident[s]" of the United Kingdom and California, respectively, and that Defendant is a "resident of the State of Washington." (D.I. 1 at 2) As the Supreme Court held more than a century ago, "residence and citizenship [are] wholly different things," and therefore "a mere averment of residence in a particular state is not an averment of citizenship in that state for the purposes of jurisdiction." *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905). In other words, while an individual's residence in a particular state might be one factor that supports a determination that the individual is also citizen of that state, it is not dispositive. *Sun Printing &*

9

*Publ'g Ass'n v. Edwards*, 194 U.S. 377, 382 (1904); *see also McCracken*, 335 F. App'x at 162 ("[C]itizenship, not residency, is the controlling factor in determining whether diversity jurisdiction exists.").

While the distinction between citizenship and residence is clear and well-established, the jurisdictional consequences of averring only residence in a Notice of Removal is not. Plaintiffs contend that Defendant's failure to allege diverse citizenship renders the Notice of Removal fatally defective, relying predominantly on Seventh Circuit precedent. *(See D.I. 6 at 6)* For instance, the Seventh Circuit has held that "'when the parties allege residence but not citizenship, the court must dismiss the suit.'" *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000) (citation omitted) *(cited in D.I. 6 at 6)*; *Guar. Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 58 (7th Cir. 1996) *(cited in D.I. 6 at 6))*; *see also Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) ("The failure to allege [a party's] citizenship in a particular state is fatal to diversity jurisdiction.").

The Court concludes that the approach taken by courts in this jurisdiction is not nearly as draconian as Plaintiffs suggest, and that, as Defendant contends, leave to amend a Notice of Removal is often granted when removal documents are similarly drafted. *See, e.g., Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459, 461 (D. Del. 1998) (granting leave to amend a Notice of Removal where the defendant alleged that the amount in controversy was less than the statutorily required minimum of $75,000.00); *Holly Farms*, 722 F. Supp. at 1156–57 (refusing to deny *ab initio* a petition for removal where corporate citizenship had not been formally alleged). Indeed, even in the two Seventh Circuit cases cited by Plaintiffs, the removing party was given the opportunity by the Court to correct deficient allegations of diverse citizenship pursuant to 28

10

U.S.C. § 1653. It was only after the party failed to avail itself of that opportunity that the Seventh Circuit affirmed the dismissal of those cases. *See, e.g., Tylka*, 211 F.3d at 448–49; *Guar. Nat'l Title Co.*, 101 F.3d at 58–59.[3] And while Plaintiffs argue that any such amendment could only be made within thirty days after Rivkin received the Complaint, (D.I. 17 at 5), the very caselaw that Plaintiffs cite suggests a much more lenient approach to amendment. *See Tylka*, 211 F.3d at 448 (permitting amendment of a Notice of Removal pursuant to 28 U.S.C. § 1653 to assert citizenship rather than residence after the case had been appealed); *Guar. Nat'l Title Co.*, 101 F.3d at 58–59 (same).

The thrust of the Notice of Removal was to allege that Plaintiff Choupak is a citizen of the United Kingdom, Plaintiff Sofinski is a citizen of California, and Defendant Rivkin is a citizen of Washington state, and that each individual's residence in those respective locales supports and confirms his citizenship there.[4] Even if this was not as clearly articulated in the Notice of Removal as it could have been, this is the sort of circumstance where the Court would grant leave to amend to clarify this point—assuming that there is an actual basis for contending

---

[3]     *See also McCracken*, 335 F. App'x at 163 (affirming district court decision to dismiss complaint for failure to adequately plead diversity of citizenship, in case where district court had "provided [plaintiff] with ample opportunity to amend his complaint to cure the defect" and plaintiff had not done so).

[4]     As at least one court has noted, the language in the removal statute is "deliberately parallel to the requirements for notice pleading in Rule 8(a) of the Federal Rules of Civil Procedure." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56). As such, the "touchstone of a court's inquiry in this regard is . . . whether [the opposing side] is on notice of a claim for relief, not whether that claim has been pled with specificity or particularity." *Eastman Chem. Co. v. AlphaPet Inc.*, Civil Action No. 09-971-LPS-CJB, 2011 WL 5402767, at *3 (D. Del. Nov. 4, 2011) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). Plaintiffs were on notice that Defendant was contending that he is a citizen, and not merely a resident, of Washington.

11

that diverse citizenship exists, such that leave to amend would not be futile. *Gargiulo v. Dessauer*, No. Civ.A.04–1206, 2004 WL 966240, at *3 (E.D. Pa. May 5, 2004) (granting leave to amend "technical" defect in notice of removal by allowing defendants to replace "resident" with "citizen") (citing cases). Thus, the alleged facial deficiency in the Notice of Removal does not by itself deprive the Court of subject matter jurisdiction. Instead, the Court must consider whether Rivkin has shown that there is complete diversity among the parties. If Rivkin has failed in that regard, then any leave to amend the Notice of Removal would be futile.

### B.     Whether Rivkin Has Shown That Complete Diversity Exists

#### 1.     Rivkin's Alleged Change in Domicile

Defendant asserts that while he was once a citizen of California, he is "no longer a citizen of that state" and instead is now "a citizen of the State of Washington who lives and works there." (D.I. 15 at 3, 6) To effect a change in domicile, an individual must (1) take up residence at the new domicile; and (2) intend to remain there. *McCann*, 458 F.3d at 281 (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972)). However, once a domicile has been acquired, it "'is presumed to continue until it is shown to have changed.'" *Korn v. Korn*, 398 F.2d 689, 691 n.4 (3d Cir. 1968) (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)). When the party claiming a new domicile is the proponent of federal jurisdiction, that party is required "to initially carry the burden of production to rebut the presumption in favor of an established domicile." *McCann*, 458 F.3d at 289. This initial burden of production to rebut the presumption of established domicile requires "the party asserting a change in domicile to produce enough evidence substantiating a change to withstand a motion for summary judgment or judgment as a matter of law on the issue." *Id*. at 288. Assuming that burden is met, the presumption disappears

and the removing party then must "carry the burden of persuasion" by demonstrating by a "preponderance of the evidence" that he is domiciled elsewhere. *Id.* at 289.

In this case, as noted above, there is no dispute that Rivkin was previously a California citizen. (D.I. 15 at 6) Thus, Rivkin has two burdens with respect to Plaintiffs' motion: (1) to produce evidence sufficient to "substantiate a change" of his domicile from California to another state as of the date of the filing of the Complaint (October 31, 2011) and the Notice of Removal (December 23, 2011); and (2) to show by a preponderance of that evidence that he was domiciled in Washington as of those two dates.

The Court finds that Rivkin has failed to satisfy his burden of production, because the evidence proffered by Rivkin is insufficient to rebut the presumption that he was still domiciled in California as of October 2011 and December 2011. After examining many of above-referenced factors relating to domiciliary status, the Court discerns no evidence that Rivkin changed his domicile from California prior to those dates.

### a. Evidence of Rivkin's Physical Presence

There is no question that Rivkin has maintained a physical presence in California for more than a decade. In the First and Second Rivkin Declarations, Defendant represents that at all times from 2000 to 2009, he was a resident in Santa Clara County, California (first at a property in Mount Hamilton, and then at a property in San Jose). (D.I. 3, ex. B at ¶ 2; D.I. 15, ex. A at ¶ 8) What is less clear, however, is whether and to what extent Rivkin has been physically present in Washington (or in any single state outside of California). At an unspecified date in 2009, for an unspecified reason, Rivkin alleges that "it became necessary for him to spend a considerable

13

amount of time in the State of Washington." (*Id.*)[5] Presumably, that purported shift in residence was because of the real estate ventures being undertaken by two of Rivkin's companies, VE&E and Acula. However, despite filing three different declarations over the course of three months, Rivkin never addresses the reason behind this alleged residential change, or identifies a date certain when he alleges that he changed his primary residence from California to Washington.

This uncertainty is exacerbated by the content of the Third Rivkin Declaration, which traces a different residential history than that outlined in the First and Second Declarations. In his third declaration, Rivkin states that no later than November 25, 2005 (four years before he earlier alleged that he began to spend "considerable amount[s] of time in the State of Washington"), he "packed belongings into a U-Haul trailer and moved to Evergreen Ridge" in Washington. (D.I. 20, ex. A at ¶ 2) He identifies three separate residences at Evergreen Ridge in which he lived—at least two of which he lived in prior to the end of 2009. (*Id.*) In other words, the Third Rivkin Declaration suggests that from 2005-2009 (and beyond), Rivkin lived (with his "belongings") primarily in Washington. Yet Rivkin's first two declarations clearly suggest, to the contrary, that from 2005 to 2009 he was primarily (if not exclusively) living in California—until a point in 2009 when he was required to spend "a considerable amount of time" in Washington. The conflicting nature of these declarations gives the Court little confidence in the reliability of Rivkin's assertion that as of the dates of the filing of the Complaint and Notice of Removal he had changed his domicile from California to Washington.

Even if Rivkin's conflicting declarations can be reconciled, at most, they suggest that at

---

[5] When Rivkin leased his San Jose residence to a tenant in June 2009, the lease required Rivkin's lessee to forward rent payments to him at an address in Los Gatos, California. (D.I. 15, ex. 4)

some point after August 2005, Rivkin obtained an apartment in Washington while he simultaneously had a residence in California. Yet the mere fact that Rivkin now claims to "live in an apartment [in] Evergreen Ridge" does not in itself clarify whether he was *domiciled* there as of the dates at issue. As Defendant's counsel acknowledged at oral argument, one can maintain a home in multiple states at any one time. (Tr. at 31, 57–58) The important question for purposes of the Court's jurisdictional analysis, however, is how Rivkin's alleged physical presence in Washington impacted his citizenship status as of late 2011.

On this point, Rivkin's declarations are muted. Rivkin does not claim that he spends all of his time, nearly all of his time, or even the majority of his time in Washington—nor does he describe how many days, weeks, or months he spent at his Washington residence(s) in any given year. Instead, the most Rivkin can assert is that after 2009 he spent a "considerable amount of time" at his Washington apartment, (D.I. 15, ex. A at ¶ 8), or that he spent "a great deal of [his] time" in the Washington apartment "particularly (among other times) [in] the latter half of 2011," (D.I. 20, ex. A at ¶ 4). Rivkin's failure to provide the Court with a more concrete understanding of how often he is physically present in Washington (relative to California or elsewhere) significantly harms his ability to demonstrate a change in domicile from California to Washington prior to October 2011 and December 2011. Rivkin's own declarations therefore do not provide sufficient evidence of physical presence outside California that would indicate a change in domicile.

### b. Evidence of Intent to Remain Outside of California

In the Third Rivkin Declaration, filed in March 2012, Defendant alleges that intended to "remain domiciled and living in Washington" and "always intend[s] to return" to Washington

15

when he travels—language that largely tracks the second prong of the legal requirement for showing domiciliary status. (D.I. 20, ex. A at ¶ 5). However, the key inquiry for the Court is not what Rivkin's intent was in March 2012, but rather what his intent was in October 2011 and December 2011. Even assuming that Rivkin meant to allege that his intention to remain in Washington predated the filing of the Complaint and Notice of Removal in this action, that allegation alone would be insufficient to create a genuine issue of fact as to his domicile. "One's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions speak louder than words." *Korn*, 398 F.2d at 691.

In this case, Rivkin's actions tell a different story. Objective evidence of intent to remain can take many forms, including establishment of a home, place of employment, location of assets, registration of a car, and generally centering one's business, domestic, social, and civic life in a jurisdiction. *See, e.g., Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995). Rivkin can point to no such evidence in support of his stated intent to make Washington his domicile.[6]

First, the evidence does not indicate that Rivkin established a home in Washington at any time before Plaintiffs filed their Complaint, even if he had apartments that were available for his use. Specifically, the only evidence of Rivkin's place of residence in Washington is that of oft-changing apartments at Evergreen Ridge, an apartment complex owned by a third-party company. The Court doubts whether any of the Evergreen Ridge apartments in which Rivkin

---

[6]     Although the evidence discussed in this section is indicative of Rivkin's intent, it also confirms that Rivkin has shown only a nominal physical presence in Washington as of the dates that the Complaint and Notice of Removal were filed.

claims to have resided ever functioned as a true home—more likely, they were simply a place to stay when he happened to be in Washington. Indeed, when Rivkin registered to vote in the State of Washington on January 12, 2012, he listed his residential address as "Apt. O" at Evergreen Ridge.[7] (D.I. 17, ex. C) Rivkin has never lived in an Apartment O—and no such apartment appears to exist at Evergreen Ridge. (D.I. 20, ex. D) While there is certainly a "Building O" within the complex, that building is designated as an office space, not as a residential space. (*Id.*; Tr. at 53) Rivkin asserts that he frequently moves from apartment to apartment in Evergreen Ridge "subject to the desires of potential tenants." (D.I. 20, ex. A at ¶ 4) In his answering brief, Rivkin asserts that "rather than having to update his unit information with the Washington Secretary of State at some uncertain frequency . . . [he] specified the location within his address at Building O, where (among other things) he works." (D.I. 20 at 3)

This rationale for why the address at Evergreen Ridge listed on Rivkin's Washington voter registration records is not an actual residential address is never discussed by Rivkin in a declaration; instead, it was presented solely in the briefs and arguments of counsel. (*See, e.g. id.*; *see also* Tr. at 53–54) But it is Rivkin's burden to show that he changed his domicile to Washington as of late 2011 and that Washington was his true, fixed, and permanent home. The lack of clarity in the record as to *what his actual residential address was* at any one point during this time does not help his cause.

Second, Rivkin's familial circumstances also do not suggest that he changed his domicile from California to Washington prior to late 2011. Instead, the evidence indicates that his ties to

---

[7]     Underscoring that Rivkin's connections to Washington are tenuous at best, his mailing address is not the same as his residential address; Rivkin's Washington voter registration records list his mailing address as a P.O. Box in Sioux Falls, South Dakota. (D.I. 17, ex. C)

California only grew stronger up through the dates of the filing of the Complaint and the Notice of Removal. For example, Rivkin's wife gave birth to their son in 2010. (*See* D.I. 17, ex. E) Rivkin's wife, step-daughter, and young son, along with Rivkin's father, all live together in a single home in San Mateo, California—and have for nearly 18 months, from January 2011 to the present. (D.I. 15, ex. A at ¶ 12; *id.*, ex. 7) Rivkin acknowledges that when he stays in California, he lives in the San Mateo house with his family. (D.I. 15, ex. A at ¶ 12) From 2011 through January 2012, as part of California state court filings relating to name change petitions for his wife and children, Rivkin used that same San Mateo address as his own residential address. (D.I. 17, ex. E) This San Mateo address is also the same residence where Plaintiffs' process server located Rivkin (who was in the home with his young child) and gave him a copy of the Complaint in December 2011. Moreover, Rivkin has not identified any family members in the state of Washington, or any change in family circumstances that would suggest that his family ties to Washington have recently increased relative to his ties in California. Ultimately, the fact that Rivkin's closest family members all live in California weighs against a finding that Rivkin changed his domicile to Washington by late 2011.

Third, Rivkin's business and employment history also fails to substantiate a change in his domicile. Rivkin has many business ventures, but he has not identified any job that he performed in Washington. Although Rivkin holds a majority membership interest in VE&E, which in turn holds and develops property in Washington (including Evergreen Ridge), Rivkin does not identify any particular business role that he plays at Evergreen Ridge (or at any business in Washington). Indeed, Evergreen Ridge is managed by third-party Shirley Kielman on behalf of Acula, not by Rivkin. (D.I. 20, ex. B) And although Rivkin holds a real estate license in

18

California, he never changed that license, or obtained a new license in Washington. As for Rivkin's other primary business, IOUBid still listed its business address and telephone number in California as of December 2011. Although Rivkin claims that IOUbid moved its "virtual office" to South Dakota right at the time that the Complaint was filed in this action, IOUbid's website from December 2011 shows an actual office building on its address page which is labeled as "California," suggesting that this was no "virtual" office. (D.I. 6, ex. F) Separate and apart from the uncertainty as to how long IOUbid's office address was located in California, what is clear is that the company has no actual or virtual offices in Washington, and that it continues to be advised by "California's oldest law firm[]." (D.I. 6, ex. D at 2)

Finally, there is also evidence of record relating to Rivkin driver's licenses, his vehicle registrations, and his exercise of political rights.[8] None of this evidence substantiates an intent to remain Washington as of October 2011 or December 2011. For example, although Rivkin asserts that he moved to Washington in 2005, began to spend a "considerable" amount of time there starting in 2009, and spent a "particularly . . . great deal of" time there starting in 2011, Rivkin has never obtained a Washington driver's license. Instead, he holds driver's licenses from California and Oregon. There is no evidence of record indicating that Rivkin has any vehicles registered in his name in Washington; instead, the record evidence shows multiple vehicles registered to Rivkin in Oregon. Rivkin did not register to vote in Washington until January 2012—more than two months after the Complaint was filed and nearly a month after

---

[8] Although the Third Rivkin Declaration refers to his intent to file a California non-resident income tax return for 2010 (presumably because he now claims to be a citizen of Washington), no such tax filings are part of the record in this case. (D.I. 15, ex. A at ¶ 10) The Court finds no reason to assign evidentiary weight to tax returns that are not in the record and that may or may not be filed at a future time.

Rivkin filed his Notice of Removal. And while Rivkin also holds a pilot's license, it was issued by California, not Washington.

### c.     Conclusion Regarding Alleged Change In Domicile

Overall, the declarations, documents and other evidence of record show a largely unsubstantiated physical presence for Rivkin in Washington from 2000 through the end of 2011, and a well-documented, well-substantiated physical presence for Rivkin in California during the same period. This evidence also overwhelmingly demonstrates that Rivkin's intention as of October 2011 was to return to the place where his wife, son, daughter, and father all live; to the place that Rivkin has consistently represented as his residence in prior court filings; to the place where Rivkin has continued to hold diverse array of personal, business and familial contacts—namely, to California. For this reason, the Court finds that Rivkin has not met his burden of production to demonstrate a change in domicile from California to Washington as of the dates of the filing of the Complaint and the Notice of Removal.[9]

### 2.     Rivkin's Alleged Domicile in Washington

Rivkin has also failed to prove that he is domiciled in Washington by a preponderance of the evidence. Even assuming for the sake of argument that there was no presumption that Rivkin

---

[9]     Defendant relies on *Unanue v. Caribbean Canneries, Inc.*, 323 F. Supp. 63 (D. Del. 1971), in support of his argument that he changed his domicile. (D.I. 15 at 6–7) But *Unanue* only bolsters the Court's conclusion here that remand is required. In *Unanue*, the defendants argued that the plaintiff changed his domicile from Puerto Rico to New York. *Id.* at 70. In rejecting defendants' argument and remanding the case, the *Unanue* Court relied on the fact that prior to the filing of the complaint in that action, the plaintiff was registered to vote only in Puerto Rico, filed federal income taxes from his Puerto Rico home, and owned a home in Puerto Rico (while merely renting a residence in New York). *Id.* at 71. While the *Unanue* plaintiff did, *inter alia*, spend a part of the year in New York, just as Rivkin spends part of his time in Washington, that fact was insufficient to effect a change in domicile. *Id.*

was a citizen of California prior to the end of 2011, for all of the reasons set forth in Section III.B.1. above, Rivkin's course of conduct would still be insufficient to establish by a preponderance of the evidence that he was domiciled in Washington as of October 31, 2011 and December 23, 2011.

### 3. Sofinski's Domicile

Rivkin also alleges that even if he is considered a citizen of California, removal from state court is nonetheless appropriate because: (1) Plaintiff Sofinski is domiciled outside of California; and (2) even if Plaintiff Sofinski is deemed to be domiciled in California, his citizenship should be disregarded for purposes of the diversity analysis. (D.I. 15 at 9–13) In either case, Rivkin asserts that complete diversity would then exist.

#### a. Sofinski's Citizenship

As to Rivkin's allegation that Sofinski should not be considered a citizen of California, the Court finds that Defendant has failed to satisfy his burden of proof.

First, contrary to Defendant's current assertions as to Sofinski's citizenship, Defendant himself previously asserted that Sofinski was a resident/citizen of California in his Notice of Removal and in an earlier filing in this case. (D.I. 1 at 2 ("Plaintiff Serguei Sofinski is a resident of California."); D.I. 3 at 3 (Defendant asserting in Memorandum in Support of his Motion to Dismiss that "Plaintiff Serguei Sofinski . . . was and is a California resident . . . .")) Defendant now contradicts these earlier statements, and contends that Sofinski is *not* in fact a resident or citizen of California. Defendant's contradictory positions underscore that he was not always of the view that Sofinski was domiciled outside of California, and that he has failed to show that Sofinski has effected a change in domicile.

Second, the only relevant question is whether Sofinski was domiciled in California as of the date the Complaint was filed and as of the date of the filing of the Notice of Removal. However, many (if not all) of Defendant's allegations are specific to time periods that are after those relevant dates. (D.I. 15, ex. A at ¶ 18 (noting in a February 2012 declaration that "[o]n information and belief, [Sofinski] *currently* spends much of his time in Russia [not California]"); D.I. 20 at 4 (asserting, in a March 2012 filing that "Sofinski *is* not a citizen of California.") (emphasis added)) They are therefore ineffective to satisfy Defendant's burden of proof.

Third, Sofinski has submitted an affidavit, stating that he has lived in California since 1998, became a naturalized U.S. citizen in 2004, is currently domiciled (along with his wife) in California, and intends to maintain that California domicile in the future. (D.I. 17, ex. E) Given these uncontradicted assertions, and the fact that there is no evidence of record that Sofinski resides in another jurisdiction, the Sofinski affidavit also weighs against Defendant's position.

In light of the foregoing, the Court concludes that Defendant has not shown by a preponderance of the evidence that Sofinski is domiciled outside California. (D.I. 15 at 10)

### b. Sofinski's Claim For Declaratory Judgment Against Rivkin

Rivkin also alleges that the Court should disregard Sofinski's citizenship for another reason. Even where there is not complete diversity among named parties, an action may nonetheless be removed if the removing party can show that the non-diverse person or entity (in this case, Sofinski) was "named or joined solely to defeat jurisdiction." *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). This doctrine, which is sometimes referred to as "fraudulent joinder," requires the removing party to show that there is "no reasonable basis in fact or colorable ground supporting the claim [asserted by the non-diverse party], or [that the non-

diverse party has] no real intention in good faith to prosecute the action." *Id.* at 216 (internal quotation marks and citations omitted); *see also Weston v. Progressive Commercial Holdings, Inc.*, No. 10-980, 2011 WL 231709, at *2 (D. Del. Jan. 24, 2011).

The Court finds that Rivkin has failed to show that Sofinski was joined "solely to defeat jurisdiction," that Sofinski was named as a plaintiff in bad faith, or that there is no reasonable basis for Sofinski's claim against Rivkin. Sofinski is a named plaintiff in the underlying Complaint, and seeks a declaration in Count I of the Complaint that he did not defraud Rivkin in connection with the sale of of Intermedia common stock.[10] (Compl. ¶¶ 34-40) Rivkin asserts that he "never stated to anyone that Sofinsk[i] defrauded him or that Rivkin was considering a claim against Sofinski." (D.I. 15 at 11)

Rivkin's statements are contradicted by the record evidence. On July 27, 2011, Richard T. White,[11] sent a letter to Intermedia's counsel (copying Rivkin) alleging the following:

> Vladimir [Rivkin] does possess other claims. Vladimir contends that he was defrauded by Michael Choupak and Sergey Soffinsky [*sic*] when selling his 2,000,000 shares of common stock. Vladimir feels that the value, direction and overall available information were misrepresented to him and concealed from him in order to obtain his 2,000,000 shares for pennies on the dollar. Intermedia.NET may be involved because Sergey Soffinsky [*sic*] was an officer and, we believe, the CEO at the time.

(D.I. 17, ex. B at 2) This letter is a clear and unequivocal statement, made on Rivkin's behalf

---

[10]    It is not clear from the face of the Complaint whether the remaining counts—Counts II and III—are alleged by both Plaintiffs or simply by Plaintiff Choupak. At oral argument, Plaintiffs' counsel acknowledged this lack of clarity. (Tr. at 9) For purposes of Defendant's fraudulent joinder argument, the Court will focus on Count I—a count that both sides agree is asserted by Sofinski against Rivkin.

[11]    Richard T. White is Rivkin's former counsel. (D.I. 24 at 4, ¶ 10)

just months before the filing of the Complaint, that Rivkin believes Sofinski defrauded him and that Rivkin was willing to assert a claim to that effect. The Complaint refers repeatedly to these threats against Sofinski. (Compl. ¶¶ 30–32) As such, there was certainly a reasonable basis for Sofinski's claim for declaratory relief in state court.[12]

Rivkin now declares that he will not pursue any claims against Sofinski regarding the circumstances set forth in the Complaint, such that there is no longer any real controversy among Sofinski and Rivkin. (D.I. 15 at 11; *id.*, ex. A at ¶ 17) However, in their Complaint, Plaintiffs allege that as part of a 2008 Stock Transfer Agreement that Rivkin signed (along with Choupak and Sofinski), Rivkin agreed to release Plaintiffs from any claim regarding the stock purchase transaction that is at issue in Count I. (Compl. at ¶ 26) Plaintiffs rightly note that because the very essence of the claim in Count I involves Rivkin's alleged reneging on this promise (via the letter sent by his counsel in July 2011), Rivkin's assertion here to the same effect—that he will not pursue any claims against Sofinski regarding that transaction—rings hollow. (D.I. 17 at 9) At a minimum, Rivkin has not shown that Sofinski's claim is baseless or without colorable support, nor that Plaintiffs do not intend in good faith to prosecute the action against him. Therefore, he has not satisfied his "heavy burden" of showing that Sofinski has been fraudulently joined. *See, e.g., Boyer*, 913 F.2d at 111 (internal quotation marks omitted).

---

[12] In order for a controversy to merit relief under Delaware's declaratory judgment statute, Del. Code Ann. tit. 10, § 6501, it must satisfy four requirements: (1) it must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between the parties whose interests are real and adverse; and (4) the issue involved in the controversy must be ripe for judicial declaration. *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1136 (Del. Super. Ct. 1992).

Even if Rivkin had proffered some evidence that Sofinski had been joined as a plaintiff merely for purposes of defeating diversity jurisdiction, the Court finds that Rivkin waived the argument that Sofinski was fraudulently joined. Although a removing party may freely amend his notice of removal during the thirty-day period after receipt of the complaint, the removing party generally must allege all grounds for removal before that thirty-day period elapses. *See* 28 U.S.C. § 1446(b); *see also Dragani v. Genesse Valley Investors*, No. 11–1193 (WJM) (MF), 2011 WL 2491066, at *6 (D.N.J. June 6, 2011) (noting that "a missing allegation . . . may not be added [to a notice of removal] by amendment after the 30-day period has expired") (internal quotations and citations omitted).

Defendant's Notice of Removal does not allege fraudulent joinder. Defendant did not assert that Sofinski had been fraudulently joined until his answering brief to the motion to remand, which was filed more than fifty days after Rivkin received a copy of the Complaint (and more than thirty days after the Notice of Removal was filed). (*See* D.I. 15) Numerous courts have held that where the removing party fails to identify fraudulent joinder as a basis for asserting jurisdiction in the notice or removal or as part of an amendment sought less than thirty days after receipt of the complaint, that party cannot later raise a fraudulent joinder argument. *See, e.g., Egger v. Marriott Int'l, Inc.*, Civil Action No. 10–6274, 2011 WL 6133280, at *3 (E.D. Pa. Dec. 8, 2011) (finding that a fraudulent joinder argument was "untimely" and had been "waived" when it was first raised in a brief opposing remand that was filed fifty-five days after service of the complaint); *accord Phillips v. BJ's Wholesale Club, Inc.*, 591 F. Supp. 2d 822, 825 (E.D. Va. 2008) (finding that a "belated allegation of fraudulent joinder" that did not appear in the petition for removal was insufficient to survive a motion to remand).

This deficiency in Defendant's Notice of Removal cannot be remedied through amendment. Defendant never moved to amend his Notice of Removal to assert that Sofinski had been fraudulently joined—but even if Defendant had done so, the Court would have been compelled to deny that request because Defendant's argument would have been an entirely new basis for invoking federal jurisdiction.[13] *See, e.g.*, *Egger*, 2011 WL 6133280, at *3 n.5 (noting that a fraudulent joinder argument provides "'completely new grounds for removal jurisdiction and may not be added'" to the removal petition after the thirty-day deadline under § 1446(a) has expired) (quoting *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 206 n.11 (3d Cir. 2003)); *see also Phillips*, 591 F. Supp. 2d at 826 (noting that leave to amend to assert fraudulent joinder would not be granted, "because the allegation that [a party] was fraudulently joined [was] entirely missing from the petition for removal"); *Castle v. Laurel Creek Co.*, 848 F. Supp. 62, 66 (S.D. W. Va. 1994) (denying leave to amend a notice of removal because the new fraudulent joinder argument was "neither minor nor technical in nature; it [was] both substantial and material").

## IV. CONCLUSION

For the reasons set forth above, Rivkin has failed to carry his burdens of production and persuasion. As such, any leave to amend the Notice of Removal would be futile, and this action should be remanded because this Court lacks subject matter jurisdiction. I therefore recommend that the Court GRANT Plaintiffs' motion to remand.

---

[13]     The circumstances surrounding Defendant's fraudulent joinder argument are distinct from those surrounding Defendant's allegedly deficient allegations of citizenship (as opposed to residence). While Plaintiffs were clearly on notice (based on the content of the Notice of Removal itself) that diversity of citizenship of all named parties was the purported basis for federal jurisdiction, Defendant provided no such notice of his contention that Sofinski was an improper party to this litigation in that document.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: June 21, 2012

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE